John T. DUNLOP, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

HERTZLER ENTERPRISES, INC., a corporation, doing business as Sandia Die
and Cartridge Company, Defendant.

Civ. No. 75–301.

United States District Court,
D. New Mexico.

Aug. 19, 1976.

Victor R. Ortega, U. S. Atty., Mark C. Meiering, Asst. U. S. Atty., Albuquerque, N. M., William E. Everheart, Asst. U. S. Atty., Dallas, Tex., Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff.

James R. Toulouse, Albuquerque, N. M., for defendant.

Before SETH, Circuit Judge, and PAYNE and BRATTON, District Judges.

## MEMORANDUM OPINION

The broad question presented in this case is whether the entry and inspection provisions of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651 et seq., are consistent with the dictates of the fourth amendment.

Congress enacted OSHA "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Employers within the Act's coverage [1] are required to provide employees a work environment "free from recognized hazards that are causing or are likely to cause death or serious physical harm." 29 U.S.C. § 654(a)(1). In addition, covered employers must comply with health and safety standards promulgated by the Secretary of Labor. 29 U.S.C. § 654(a)(2). Civil and criminal penalties may be incurred for violation of these statutorily imposed duties. 29 U.S.C. § 666. As part of its enforcement scheme, OSHA provides that:

". . . the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee." 29 U.S.C. § 657(a).

The facts in this case are stipulated and undisputed. On February 12, 1975, during normal working hours, two authorized representatives of the Occupational Safety and Health Administration (Administration), United States Department of Labor, appeared at Hertzler Enterprises, Inc. (Hertz-

---

1. OSHA applies to any private concern engaged in a business affecting commerce which has employees. 29 U.S.C. § 652(5).

ler)[2], doing business as Sandia Die and Cartridge Company, to conduct an inspection of the premises pursuant to 29 U.S.C. § 657(a). These representatives presented their credentials to Donna Walker Hertzler, President of Hertzler, who denied them entry and refused to permit an inspection. ·

The inspection attempted apparently was undertaken as a matter of routine for the purpose of determining whether Hertzler was in compliance with OSHA. There is no evidence that it arose out of any emergency, employee complaint, or belief that Hertzler was in violation of OSHA.

On April 16, 1975, a representative of the Administration made application to a United States Magistrate for an inspection warrant. The magistrate promptly issued a warrant ordering the entry, inspection and investigation of Hertzler. However, no showing of probable cause was made as a basis for issuance of this inspection warrant.[3] On April 16, 1975, and again on April 18, 1975, OSHA compliance officers attempted to serve the inspection warrant and to inspect Hertzler, but they were denied entry.

On June 5, 1975, the Secretary of Labor instituted this suit by petitioning the court for an order compelling Hertzler to submit to an inspection under 29 U.S.C. § 657(a). Jurisdiction was invoked under 28 U.S.C. §§ 1337, 1345. A show cause order issued on June 6, 1975, and, thereafter, Hertzler filed an application for a permanent injunction to restrain enforcement of the OSHA inspection provisions[4] for repugnance to the United States Constitution. Accordingly, a three-judge court was convened pursuant to 28 U.S.C. § 2282.

■ Plaintiff Secretary claims that the petition for entry, inspection, and investigation should be granted for the reason that, consistent with the dictates of the fourth amendment, 29 U.S.C. § 657(a) permits OSHA compliance officers to conduct a nonconsensual inspection of a business covered by the Act without first making any showing of probable cause.

Hertzler recognizes that the government has a valid interest in effectuating the Act's purpose of protecting employees through control of hazardous working conditions. Further, it concedes that inspections may be necessary to accomplish this purpose. Yet, Hertzler insists that the fourth amendment protects it from being inspected against its will by the Administration unless a warrant is first obtained upon a judicial officer's determination of probable cause. To the extent that § 657(a) authorizes OSHA compliance officers to conduct an objected-to inspection without prior resort to a search warrant based on probable cause, Hertzler claims it violates the fourth amendment, and therefore, that its enforcement must be enjoined.

In support of the Secretary's position, reliance is placed on the case of *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D.Ga.1974). The *Buckeye* case arose when the Secretary of Labor petitioned a Georgia federal district court for an order requiring Buckeye Industries to submit to an OSHA inspection after access to the facility had been denied to a compliance officer attempting a general inspection. No search warrant had been sought by the Administration because of an apparent lack of any requisite probable cause. Nevertheless, the inspection order requested by the Secretary was granted over the company's objection that a nonconsensual OSHA inspection is unconstitutional under the fourth amendment unless conducted pursu-

---

**2.** Hertzler manufactures ammunition and paper boxes, and it is an employer subject to the provisions of OSHA.

**3.** The warrant application included only a recitation of the OSHA inspection provisions as authority for the proposed inspection plus statements to the effect that inspection of Hertzler was necessary to determine its compliance with OSHA and that OSHA inspectors previously had been denied entry at Hertzler. The warrant itself contained a conclusory assertion that reasonable legislative and administrative standards had been proposed for the inspection pursuant to 29 U.S.C. § 657(a).

**4.** Of the Act's various provisions initially challenged, only the inspection provisions remain in issue.

ant to a warrant obtained upon a showing of probable cause. The Georgia court thus held that warrantless, nonconsensual OSHA inspections performed pursuant to § 657(a) are valid under the fourth amendment.[5] *Id.* at 1354.

Hertzler bases its position on the case of *Brennan v. Gibson's Products, Inc.,* 407 F.Supp. 154 (E.D.Tex.1976), which is squarely in conflict with *Buckeye.* In *Gibson's Products,* on facts nearly identical to those presently before the court[6], it was held that the fourth amendment prohibits warrantless, nonconsensual OSHA inspections. *Id.* at 156. However, the Texas court refrained from invalidating the OSHA inspection provisions; instead, it construed § 657(a) to authorize an OSHA inspection over an objection only when conducted pursuant to "a search warrant issued by a United States Magistrate or other judicial officer of the third branch under probable cause standards appropriate to administrative searches—that is, in a constitutional manner." *Id.* at 162.

It is concluded that in this case the fourth amendment protects Hertzler from being required to submit to the inspection proposed by the Administration unless a search warrant is first obtained on a showing of probable cause. Enforcement of the OSHA inspection provisions need not be enjoined, however, since § 657(a) is here construed, as it was in *Gibson's Products,* to empower the

Administration to conduct a nonconsensual inspection only pursuant to a search warrant issued by a judicial officer upon a showing of probable cause sufficient to justify an administrative search.

Controlling in the resolution of this case are two relatively recent pronouncements of the Supreme Court to the effect that administrative searches are subject to the fourth amendment requirement of a warrant. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

In *Camara,* the Supreme Court held that officers seeking to conduct a routine code-enforcement "area" inspection of a private dwelling, as authorized by the municipal housing code, were required under the fourth amendment to obtain a warrant upon being denied entry by the resident.[7] 387 U.S. at 534, 87 S.Ct. 1727. According to *Camara,* issuance of an inspection warrant is to be based on satisfaction of a flexible probable cause standard. That is, the need to search is to be weighed against the invasion which the search entails, and the resulting balance may vary from inspection to inspection, depending on, for example, the public need for effective enforcement in a particular area, the nature of the search proposed, the legislative and administrative standards under which particular regulatory inspections are to be conducted, an

---

**5.** A Montana federal district court, citing the *Buckeye* case as authority, granted the Secretary's petition for an order allowing entry, inspection and investigation of an unwilling employer without requiring the Administration to first obtain a warrant based on a showing of probable cause. *Dunlop v. Able Contractors,* Civ.No. 75–57 (D.Mont., Dec. 15, 1975).

**6.** *Gibson's Products* grew out of an employer's refusal to permit an OSHA inspection of the nonpublic portions of his store. The procedural sequence in the Texas case is indistinguishable from that in the instant case except as to one particular. No search warrant was sought by the Secretary in *Gibson's Products* although the Administration's Compliance Operations Manual advised that an inspection warrant be pursued upon an employer's attempt to limit or interfere with an OSHA inspection. 407 F.Supp. at 156 & n. 4. However, it was appar-

ent from the stipulated facts in *Gibson's Products,* as it is in this case, that no probable cause was shown which would justify issuance of a warrant. *Id.* at 156.

It should be noted that, at present, the Administration does not recommend pursuit of a warrant where an employer refuses to allow his premises to be inspected. Rather, where such refusal to permit inspection is encountered, resort to "legal process" or "compulsory process" is advised. *See* OSHA Field Operations Manual, P.P. V–6—V–7 (Sept., 1975); 29 C.F.R. § 1903.4.

**7.** The *Camara* court recognized that its holding did not foreclose warrantless inspections in emergency situations and that consent by the citizenry to inspections of their property would frequently obviate the need for warrants. 387 U.S. at 539, 87 S.Ct. 1727.

agency's experience with particular facilities, and the length of time which has passed without inspection. *Id.* at 535–39, 87 S.Ct. 1727.

The subject of the *See* case was an attempted routine inspection authorized by a municipal fire code to obtain compliance with its provisions. In *See* it was held that the warrant requirement and probable cause standards articulated in *Camara* were applicable to unconsented administrative inspections of commercial premises. 387 U.S. at 543–545, 87 S.Ct. 1737. However, any question as to the validity of regulatory inspections conducted as part of licensing programs was expressly reserved for decision on a case by case basis. *Id.* at 546, 87 S.Ct. 1737.

A result contrary to that reached by the Court in this case is not called for by the Supreme Court's decisions in *Colonade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), or their progeny in the lower courts.

The *Buckeye* court, in upholding warrantless nonconsensual OSHA inspections, reasoned that the Supreme Court's decisions in *Colonade* and *Biswell* signified a general retreat from the warrant requirements imposed by *Camara* and *See* in the area of administrative inspections. It construed the *Colonade-Biswell* line to permit warrantless administrative inspections if conducted in accord with legislative authorization reasonable in time and scope and if a strong governmental interest and administrative efficiency would be served thereby.

See *Brennan v. Buckeye Industries, Inc., supra* at 1354–1356; *Brennan v. Gibson's Products, Inc., supra* at 160–161.

*Colonade Catering Corp. v. United States* approved a warrantless nonconsensual inspection of a liquor licensee conducted pursuant to a federal inspection law for the purpose of investigating a possible violation of federal excise tax law. 397 U.S. at 76–77, 90 S.Ct. 774. In *United States v. Biswell,* the Supreme Court upheld warrantless inspections of licensed firearms dealers conducted pursuant to provisions of the Gun Control Act of 1968. 406 U.S. at 315, 92 S.Ct. 1593.

This Court finds, as did the court in *Gibson's Products,* that a more restrictive reading of the *Colonade* and *Biswell* cases is required, especially in light of the Supreme Court's recent pronouncements in *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973)[8] and *Air Pollution Variance Board v. Western Alfalfa Corp.,* 416 U.S. 861, 864, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974).[9] Thus, it is concluded that *Colonade* and *Biswell* create a narrow exception to the general *Camara–See* rule requiring that objected-to administrative inspections be conducted only within the framework of a warrant procedure.

■ The *Colonade–Biswell* exception is applicable only if certain factors identified by the Supreme Court are present in a particular case. These factors may be broadly grouped and summarized as follows. First, the enterprise sought to be inspected must be engaged in a pervasively regulated business.[10] The presence of this factor insures that warrantless inspection

**8.** *Almeida-Sanchez* declared unconstitutional a warrantless automobile search conducted by roving officers of the United States Border Patrol, pursuant to the purported authority of a federal statute and regulations permitting warrantless automobile stops and searches within 100 air miles of the border. The Supreme Court found *Colonade* and *Biswell* inapplicable to validate the search, instead concluding that, under the facts, the *Camara –See* rule applied to require a warrant. 413 U.S. 270–272, 93 S.Ct. 2535.

**9.** In *Western Alfalfa,* a state health inspector conducted a test of smoke emitted from a com-

pany's chimneys to determine whether air quality standards were being violated. The test, conducted on the company's outdoor premises without its knowledge or consent was challenged as an unreasonable search. In rejecting the challenge, the Supreme Court cited the "open fields" exception to the requirement of a warrant but noted its continued adherence to *Camara* and *See* where applicable. 416 U.S. 864, 94 S.Ct. 2114, 40 L.Ed.2d 607.

**10.** The *Biswell* decision made clear that licensed gun dealers are pervasively regulated. 406 U.S. at 312 n. 1, 315–316, 92 S.Ct. 1593. Further, in *Colonade* the Supreme Court em-

will pose only a minimal threat to justifiable expectations of privacy.[11] Second, warrantless inspection must be a crucial part of a regulatory scheme designed to further an urgent federal interest.[12] And third, the inspection must be conducted in accord with a statutorily authorized procedure, itself carefully limited as to time, place, and scope.[13] The presence of this factor guards against the possibility that any inspection right will be abused.

Hertzler's subjection to the OSHA inspection scheme is based solely on its status as an employer. *See* n. 1 *supra.* As a manufacturer of ammunition and paper boxes, it is not engaged in a pervasively regulated business and thus cannot be deemed to have impliedly consented to regulatory inspection. *See* n. 11 *supra.* This circumstance renders the *Colonade–Biswell* rationale inapplicable here and requires that Hertzler's justifiable expectations of privacy be protected under the fourth amendment. Thus, the *Camara–See* rule is properly invoked in this case, and the Administration must obtain a search warrant based on an appropriate showing of probable cause before Hertzler can be required to submit to the OSHA inspection previously resisted. This conclusion is not inconsistent with the progeny of *Colonade* and *Biswell* in the lower courts; the warrantless regulatory inspections

phasized that it was dealing "with the liquor industry long subject to close supervision and inspection" and that "[a]s respects that industry, and its various branches including retailers, Congress has broad authority to fashion standards of reasonableness for searches and seizures." 397 U.S. at 77, 90 S.Ct. at 777. *See Almeida-Sanchez v. United States, supra* 413 U.S. at 270–271, 93 S.Ct. 2535.

11. For example, the Biswell court observed:
"It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection. Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority. . . . The dealer is not left to wonder about the purposes of the inspector or the limits of his task." 406 U.S. at 316, 92 S.Ct. at 1596.
Based on the foregoing passage of the *Biswell* case, it was concluded in *Almeida-Sanchez* that
"businessmen engaged in . . . federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade . . . .. The businessman in a regulated industry in effect consents to the restrictions placed upon him." 413 U.S. at 271, 93 S.Ct. at 2538.

12. In *Biswell,* the court stressed that
"close scrutiny of [interstate firearms] traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders. . . . Large interests are at stake, and inspection is a crucial part of the regulatory scheme, since it assures that weapons are distributed through regular channels and in a traceable manner and makes possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms.
It is also apparent that if the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment. . . . Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible. 406 U.S. at 315–316, 92 S.Ct. at 1596.
*See Id.* at 317, 92 S.Ct. 1593; *Colonade Corp. v. United States, supra* 397 U.S. at 75–76, 90 S.Ct. 774.

13. This factor is suggested from the following language in *Biswell*:
"In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute." 406 U.S. at 315, 92 S.Ct. at 1596.
Additional support for this proposition is provided in *Colonade*:
"Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." 397 U.S. at 77, 90 S.Ct. at 777.

there upheld have been within the context of pervasively regulated enterprises.[14]

The *Colonade–Biswell* line of cases is distinguishable from the case presently before the Court in one additional significant particular. Where inroads on the warrant requirement have been upheld, it has been within the context of a regulatory inspection scheme relatively narrow in scope, that is, one focused on a particular industry or item which historically has been an object of pervasive governmental concern or which involves some inherent danger. The scope of OSHA is far from narrow. As observed by the court in *Gibson's Products*:

> "OSHA's sweep is broad, and Congress' findings supporting it are slender. Made subject to its warrantless inspection is every private concern engaged in a business affecting commerce which has employees and all 'environments' where these employees work. It thus embraces indiscriminately steel mills, automobile plants, fishing boats, farms and private schools, commercial art studios, accounting offices, and barber shops—indeed, the whole spectrum of unrelated and dispa-

rate activities which compose private enterprise in the United States." 407 F.Supp. at 161 (footnote omitted).

Because of the narrower scope of the regulatory schemes pursuant to which inspections were undertaken in *Colonade* and *Biswell*, there was certainty "that the concerns [there] searched had on the premises and dealt in the sensitive commodities— guns and liquors—which occasioned official scrutiny." *Brennan v. Gibson's Products, supra* at 162. *See Almeida-Sanchez v. United States, supra* 413 U.S. at 271–272, 93 S.Ct. 2535. By contrast there is no evidence that "the thing sought to be controlled— hazardous working conditions—exists in the area to be searched" in this case. *Brennan v. Gibson's Products, supra* at 162. *See Almeida-Sanchez v. United States, supra* 413 U.S. at 271–272, 93 S.Ct. 2535. Thus, it is not certain that inspection of Hertzler will advance the urgent federal interest upon which the OSHA regulatory scheme is premised.

Section 657(a) could not constitutionally authorize a warrantless inspection of Hertzler for the reasons previously outlined.[15]

---

14. *Terraciano v. Montanye,* 493 F.2d 682 (2d Cir. 1974) (statutorily authorized inspection of licensed pharmacist's drug records); *Youghiogheny & Ohio Coal Co. v. Morton,* 364 F.Supp. 45, 49–50 (S.D.Ohio 1973) (inspection of coal mine conducted pursuant to statute); *United States v. Business Builders,* 354 F.Supp. 141 (N.D.Okl.1973) (warehouse containing federally regulated food products inspected pursuant to federal statute); *United States v. Del Campo Baking Mfg. Co.,* 345 F.Supp. 1371, 1377 (D.Del.1972) (statutorily authorized inspection of bakery business).

  *See Lake Butler Apparel Co. v. Sec. of Labor,* 519 F.2d 84 (5th Cir. 1975). In that case, the court found it unnecessary to resolve a fourth amendment challenge to a warrantless OSHA inspection upon concluding that express consent to the inspection had been given. However, the court's treatment of the issue is noteworthy.

  "Lake Butler contends that OSHA authorizes warrantless inspections by its compliance officers in violation of the Fourth Amendment. Citing *Camara v. Municipal Court,* 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; and *See v. Seattle,* 1967, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943, Lake Butler would have this Court void the admin-

istrative hearing because the violations were discovered pursuant to an illegal search. In response, the government argues that business enterprises subject to OSHA inspections should fall under the 'implied consent' exception to the Fourth Amendment. *United States v. Biswell,* 1972, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87. *In the past this exception has been limited to businesses the government has had 'historically broad authority' to regulate, e. g., the liquor industry, Colonade Catering Corp. v. United States,* 1970, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60; *Boyd v. United States,* 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, *and any attempt to expand the concept must be cautiously analyzed." Id.* at 87–88 (emphasis added) (citations and footnotes omitted).

15. It is therefore unnecessary to determine whether the section's inspection procedure is reasonable in time, place, and scope. This inquiry need only be made where warrantless, nonconsensual inspection can comprise a valid part of a regulatory scheme. *See* n. 13 *supra.* Note *Brennan v. Buckeye Industries, Inc.: The constitutionality of an OSHA warrantless search,* Duke L. J. 406, 412–13 nn. 44 & 52 (1975).

**634**

Nevertheless it is unnecessary to invalidate this inspection provision. A construction of § 657(a) as permissive of warrantless inspections is not required either by the section's language [16] or by its legislative history.[17] Thus, it is presumed that Congress intended to empower the Administration to conduct nonconsensual inspections only pursuant to the authority of a warrant issued upon satisfaction of standards of probable cause which have been articulated in the area of administrative searches.

Since no showing of probable cause was made for the issuance for the warrant to inspect Hertzler, an injunction will be issued permanently restraining the plaintiff from making a nonconsensual entry, inspection and investigation of the Hertzler premises on the basis of the warrant issued by the Magistrate on April 16, 1975. Since the statute as construed in this opinion is constitutional, the three-judge court will be dissolved and the matters referred to the single judge to whom the case was originally assigned.

---

16. The *Gibson's Products* decision notes that "[w]hile [§ 657(a)] does authorize entries 'without delay,' this is not an unambiguous equivalent for 'without a warrant.'" 407 F.Supp. at 162.

17. A survey of the Act's legislative history prompted the court in *Gibson's Products* to observe:

"The only suggestion that the statute contemplates warrantless searches is a passing remark to that effect in the minority views on a version of the bill which was rejected. *See* H.R.Rep. No. 1291, 91st Cong., 2d Sess.

55 (1970). The only discussion of the 'without delay' phrase shows that it was intended to prevent an employer from thwarting inspections by avoiding the inspector's presentation of credentials. 116 Cong.Rec. 38, 709 (1970) (remarks of Congressman Galifianakas, quoting Congressman Steiger). The author of the 'without delay' phrase reminded the House that inspections would have to be conducted in accordance with 'applicable constitutional protections.' *Id.* (remarks of Congressman Steiger)." *Id.* at 162 n. 18.