**EMPIRE STEEL MANUFACTURING CO., Plaintiff,**

v.

**Ray MARSHALL, Secretary of Labor of the United States of America, in his official capacity, Harry C. Hutton, Area Director for Montana of the Occupational Safety and Health Administration, an agency of the United States Department of Labor, in his official capacity, and Louis O. Aleksich, United States Marshal, in his official capacity, Defendants.**

**No. CV–77–48–BLG.**

United States District Court,
D. Montana,
Billings Division.

Sept. 1, 1977.

Stephen H. Foster, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for plaintiff.

Donald R. McCoy, U. S. Dept. of Labor, Denver, Colo., for defendants.

## OPINION AND ORDER

BATTIN, District Judge.

The issue presented in this case involves the authority of the Secretary of Labor under the Occupational Safety and Health Act of 1970 to conduct inspections of employers engaged in interstate commerce, under § 8(a), 29 U.S.C. § 657.

The plaintiff is a Montana corporation engaged in the manufacture of steel products in Billings, Montana, and conducting business affecting interstate commerce. Empire Steel employs approximately 55 persons who are represented by the United Steelworkers of America, AFL–CIO, Local Union 3169.

On March 1, 1977, an employee of Empire Steel was injured when his arm became engaged in the rolls of a steel bending and rolling machine on the plaintiff's premises, resulting in the amputation of his arm. Subsequently, on March 3, compliance officers of the Occupational Safety and Health Administration, Department of Labor, inspected the machine that caused the injury. A citation was issued which alleged that the machine was operated in violation of the Occupational Safety and Health Act.

On March 30, Local Union 3169 filed a notice with the Area Director of the Occupational Safety and Health Administration requesting a safety and health inspection of the Empire Steel premises. The anonymous request, authorized by § 8(f)(1), 29 U.S.C. § 657(f)(1), detailed some 80 items allegedly constituting recognized hazards likely to cause death or serious physical harm. Section 5(a)(1), 29 U.S.C. § 654(a)(1). The Area Director to whom the complaint was referred concurred in the opinion that the allegations were sufficient to constitute serious violations of the Act. The Director assigned a compliance officer to initiate an inspection of the Empire Steel premises based on the complaint.

On March 31, 1977, the compliance officer, Jerry Conn, appeared at the Empire Steel establishment during regular business hours. The vice president of Empire Steel, Thomas B. Breen, Jr., was shown Conn's credentials and was furnished with a copy of the complaint upon which the inspection was initiated. Section 8(f)(1), 29 U.S.C. § 657(f)(1). Conn explained to Vice President Breen the purpose of his visit. Breen, acting upon the advice of his attorney, refused to allow the compliance officer to conduct the inspection. Conn made no further attempt to gain entry to the Empire Steel premises but returned to his office and reported to the Area Director.

On April 1, 1977, the defendants applied to the United States Magistrate for a search warrant to conduct the inspection. The warrant application was accompanied by affidavits of two employees of Empire Steel, employees who are also officials of Local 3169. Additionally, the Area Director appended an affidavit setting forth facts indicating Empire Steel was subject to the Act and stating that in his opinion there were reasonable grounds to believe that violations existed on their premises.

On April 5, 1977, the United States Magistrate issued a warrant ordering that an inspection be conducted of "the structures, machines, apparatus, devices, equipment and materials more particularly described in a complaint filed pursuant to 29 U.S.C. § 658(f)(1) [sic], a copy of which is attached hereto and made a part hereof, which are being used and/or maintained in a manner which violates 29 U.S.C. § 655[654](a)(1) and 29 U.S.C. § 655[654](a)(2)" and further ordering that the inspection be conducted as provided by 29 U.S.C. § 657(a). Before the warrant could be served, Empire Steel, acting through counsel, applied for a temporary restraining order and moved for a permanent injunction on the grounds that the corporation was in imminent jeopardy of having constitutional rights violated. The motion for a temporary restraining order was granted by the Court at 9:11 o'clock a. m. April 6, 1977.

On April 19, 1977, the defendants moved for a separate order compelling the inspection of the plaintiff's business premises. At the same time, the defendants moved to consolidate the hearing on the motion for a permanent injunction with the trial of the action on the merits. The motion was granted by order of this Court dated April 25, 1977. The initial trial date was vacated upon the defendants' request and rescheduled for May 23, 1977. On that day, the defendants offered certain exhibits into evidence and the parties agreed that the remaining facts were uncontested and submitted the matter to the Court for decision.

The Court, having considered the issues and authorities of the respective parties, finds that warrantless administrative inspections are not constitutionally permissible under 29 U.S.C. § 657(a)(1). However, where the Secretary is able to show that probable cause exists to believe a violation of the Act has occurred, then the subject premises may constitutionally be searched under a warrant issued by a magistrate when the search instrument complies with the mandate of the Fourth Amendment.

The facts of this case are inapposite to the issue of whether warrantless searches are authorized under Section 8(a) of the Act. However, the plaintiff's ultimate position is founded on a premise that any search or inspection conducted pursuant to § 8(a), 29 U.S.C. § 657(a) of the Act, is unconstitutional. There is little question that warrantless inspections under § 8(a) of the Act violate the Fourth Amendment's proscription against searches without warrants. This conclusion is based on several Supreme Court decisions which have established the scope and limits of warrantless searches.

In *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court overruled the position it had earlier taken in *Frank v. Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), concerning administrative searches. In *Camara,* the United States Supreme Court held that the Fourth Amendment bars prosecution of a person who did not permit a warrantless administrative inspection of his personal residence. In articulating its reasoning in *Camara,* the Supreme Court recognized the axiom mirrored by history and experience, that, except in certain carefully defined classes of cases, a warrantless search of private property without proper consent is unreasonable within the meaning of the Fourth Amendment. *Camara v. Municipal Court, supra,* 387 U.S. at 528, 87 S.Ct. 1727. The *Camara* Court found the "probable cause" standard necessary for administrative kinds of inspections may not be as strict as the standard necessary to establish probable cause in criminal cases.

"The warrant procedure is designed to guarantee that a decision to search pri-

vate property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." *Camara v. Municipal Court, supra* at 539, 87 S.Ct. at 1736.

In concluding, the Court noted that there was no emergency demanding immediate access shown by the facts in *Camara*. Furthermore, the inspectors had made three trips to the building in an attempt to get the appellant's consent to search, yet no search warrant was obtained prior to any of those appearances. Thus, the appellant had a constitutional right to insist that the inspectors obtain a warrant to search. Camara could not be constitutionally convicted for refusing to consent to the inspection.

In a companion case, *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) the Court extended the *Camara* holding to commercial property. In *See,* the petitioner was convicted for refusing to permit a fire inspector to inspect a locked warehouse when the inspector did not have a warrant. The occasion for the inspection arose as part of a routine procedure by the Seattle Fire Department seeking to compel compliance with the Seattle Fire Code. The Court held that:

> "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See v. City of Seattle, supra* at 543, 87 S.Ct. at 1739.

The Court found that administrative entry without consent on portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure.

> "We hold only that the basic component of a reasonable search under the Fourth Amendment—that it not be enforced without a suitable warrant procedure—is applicable in this context, as in others, to business as well as to residential premises."

Following the *Camara* and *See* cases, several Courts, including the United States Supreme Court, approved narrower dispensations from the warrant strictures that had been approved in *Camara* and *See.*

The first of the cases which ostensibly narrowed the holdings in *Camara* and *See* came in the case of *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). In *Colonnade,* the Court seemed to take a step back from the broad proscription against warrantless searches. It did so in approving warrantless inspections of federally licensed liquor dealers on the ground that historically the industry had been subject to strict government licensing and regulation. The Court specifically found that *See v. City of Seattle* was not applicable. *Colonnade Catering Corp. v. United States, supra* at 76, 90 S.Ct. 774. It noted that:

> "Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Colonnade v. United States, supra* at 77, 90 S.Ct. at 777.

However, an important factual distinction was found to exist in *Colonnade*. The Court was dealing with the liquor industry which was long subject to close supervision and inspection. Thus, the warrantless inspection procedure in such a circumstance was constitutionally permissible.

The second case which seemed to further limit the *Camara* and *See* holdings was *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1932). *Biswell* extended the *Colonnade* reasoning to firearms dealers principally upon the notion of implied consent for searches. In *Biswell,* the petitioner was a pawnshop owner licensed by the federal government to deal with sporting weapons. He was visited by a police officer and a federal government agent who requested permission to enter a locked gun storeroom. The officers had no warrant, and upon the request the petitioner opened the door to the vault. The officers subsequently discovered unauthorized

machineguns kept in the vault, guns that were introduced as evidence at his trial. The *Biswell* Court enunciated a standard against which warrantless inspections must be measured.

" . . . [W]here, as here, regulatory inspections further *urgent federal interest,* and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute." *United States v. Biswell, supra* at 317, 92 S.Ct. at 1597 (emphasis supplied).

There were important factors to be considered in balancing the "urgent federal interest" standard against the individual's expectation of privacy. It was important that in the context of the Gun Control Act, inspection was a crucial part of the regulation of the industry, enforcement of the Act required inspection without a warrant, and, furthermore, the warrant could frustrate the purpose of the inspection.

The *Colonnade-Biswell* line of cases adopted what is essentially a two-tiered level of analysis to test the validity of warrantless administrative searches, absent probable cause to suspect a violation: (1) an urgent federal interest or a pervasively regulated industry must be involved, and (2) the inspection procedures themselves must be reasonable in time, manner and scope. See, *United States v. Del Campo Baking Mfg. Co.,* 345 F.Supp. 1371 (D.Del.1972); *Youghiogheny and Ohio Coal Co. v. Morton,* 364 F.Supp. 45 (S.D.Ohio 1973); *United States ex rel. Terraciano v. Montanye,* 493 F.2d 682 (2nd Cir. 1974), cert. denied 419 U.S. 475, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974).

Doubts about the applicability and continued viability of the *Camara-See* line of cases, as well as the parameters set by the *Colonnade-Biswell* line of cases, were set to rest in the case of *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). There the Court invalidated a warrantless search by the Roving Patrol of the Immigration and Naturalization Service. The *Almeida-Sanchez* Court strongly implied that *Camara* and *See* are

good law and furthermore distinguished the *Colonnade-Biswell* line of cases.

"A central difference between those cases and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business. The businessman in a regulated industry in effect consents to the restrictions placed upon him." *Almeida-Sanchez v. United States, supra* at 271, 93 S.Ct. at 2538.

In 1974 the Supreme Court expressly reaffirmed *See* and *Camara.* In the context of an administrative inspection conducted for purposes of promoting health and sanitation, the Court found in the case of *Air Pollution Variance Board v. Western Alfalfa Corp.,* 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), that *Camara* and *See* lived on. An inspector of the Colorado Department of Health entered the outdoor premises of Western Alfalfa without its knowledge or consent and without a warrant. The Court specifically found that the inspection of the premises in this instance was within the "open field" exemption to the Fourth Amendment announced in *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1925).

Shortly after the Supreme Court's decision in *Almeida-Sanchez,* the warrantless inspection provisions of the Occupational Safety and Health Act were upheld. *Brennan v. Buckeye Industries, Inc.,* 374 F.Supp. 1350 (S.D.Ga.1974). Explicit in the *Brennan v. Buckeye Industries* opinion is Judge Lawrence's prognostication of the general narrowing of the *Camara* and *See* holdings by *Colonnade* and by *Biswell.* However, Judge Lawrence was without the benefit of *Western Alfalfa's* express affirmation of the holdings in *Camara* and *See.* Thus, the law of *Brennan v. Buckeye Industries* can effectively be ignored.

Since the *Brennan v. Buckeye* case, there have been three significant three-judge district court cases which have addressed the question of the OSHA inspection provisions.

*Brennan v. Gibson's Products, Inc. of Plano,* 407 F.Supp. 154 (E.D.Tex.1976); *Dunlop v. Hertzler Enterprises, Inc.,* 418 F.Supp. 627 (D.N.M.1976); *Barlow's, Inc. v. Usery,* 424 F.Supp. 437 (D.Idaho 1977), prob. juris. noted *sub nom. Marshall v. Barlow's, Inc.,* 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 354 (1977). Additionally, another federal district court denied a motion for an order to compel a warrantless inspection in *Usery v. Centrif-Air Machine Co., Inc.,* 424 F.Supp. 959 (N.D.Ga.1977).

The most-cited of the three-judge opinions is the opinion of the Court in the case of *Brennan v. Gibson's Products, Inc. of Plano, supra.* In that case, the Court found OSHA's sweep to be broad and Congress's findings supporting it, slender. *Brennan v. Gibson's Products, supra* at 161. In *Gibson's Products,* a portion of the store in Texas was not open to the public. The OSHA compliance officers presented their credentials to the management in an attempt to inspect the non-public portions of the store. The compliance inspection was not the result of any complaint but was instead a routine inspection. Gibson's refused the inspection and OSHA sought an order to compel the inspection, not a search warrant as no probable cause existed. The Gibson's people asserted that a search warrant was necessary when an inspection was to be conducted against the owner's or occupier's will.

The *Gibson's Products* Court held that the Fourth Amendment forbade objected-to searches of business premises under the Occupational Safety and Health Act as being contrary to the Fourth Amendment except where the inspection was conducted by a warrant. The Court found it unnecessary to strike the entire OSHA regulatory inspection scheme as being void. The Court reasoned that were inspections to stand on the authority of warrantless searches alone, the statutes were constitutionally repugnant and therefore could not be enforced. However, the Court noted:

"Mindful of our duty to construe a statute, if possible, in a manner consistent with the fourth amendment, we believe that 29 U.S.C. § 657(a) was intended by Congress to authorize objected-to OSHA inspections only when made by a search warrant issued by a United States Magistrate or other judicial officer of the third branch under probable cause standards appropriate to administrative searches—that is, in a constitutional manner. Our independent interpretation of the statute is reinforced by the contemporaneous administrative construction of the statute, as evidenced by the requirement of an 'inspection warrant' found in the Compliance Operations Manual and by the reference to 'compulsory process' in 29 C.F.R. § 1903.4." *Brennan v. Gibson's Products, Inc., supra* at 162 (footnote omitted).

*Gibson's Products* thus held that the Fourth Amendment prohibits warrantless, nonconsensual OSHA inspections. The Court refused to order an inspection, presumably because no probable cause had been established.

In *Dunlop v. Hertzler Enterprises, Inc., supra,* the three-judge district court convened in the District of New Mexico found it unnecessary to enjoin the inspection provisions of the OSHA statutes when it construed 29 U.S.C. § 657(a) as it was construed in the *Gibson's Products* case. In *Dunlop,* the Court found that nonconsensual inspection could be conducted only if done on the authority of a search warrant issued by a judicial officer upon a showing of probable cause. *Dunlop v. Hertzler Enterprises, supra* at 630. The Court found that:

"Section 657(a) could not constitutionally authorize a warrantless inspection . . . . Nevertheless it is unnecessary to invalidate this inspection provision. A construction of § 657(a) as permissive of warrantless inspections is not required either by the section's language or by its legislative history. Thus, it is presumed that Congress intended to empower the Administration to conduct nonconsensual inspections only pursuant to the authority of a warrant issued upon satisfaction of standards of probable cause which have been articulated in the area of administrative searches." *Dunlop v. Hertzler, supra* at 633–634 (footnotes omitted).

The *Dunlop* Court observed that there had been no showing of probable cause for the issuance of a warrant to inspect Hertzler. Thus it issued a permanent injunction restraining the plaintiff from making a nonconsensual entry on Hertzler's premises.

The harmony between the decisions of the three-judge courts in New Mexico and Texas was ruffled by the decision of the three-judge court convened in Idaho in the case of *Barlow's, Inc. v. Usery, supra*. It is the *Barlow's* case that the plaintiff relies on to bridge the gap in its argument concerning the constitutional repugnance of any inspection under the auspices of 29 U.S.C. § 657(a). The plaintiff's hypothesis is that because the statute is repugnant in one sense to the Constitution, and because it lacks specific authority for granting search warrants, then it is repugnant to the Constitution in every sense and must therefore be stricken.

The facts in the *Barlow's* case are similar to the facts in this case, with one crucial exception. In *Barlow's*, the compliance officer for the Occupational Safety and Health Act arrived at the plaintiff's office, properly identified himself, and requested permission to inspect the nonpublic area of Barlow's. The president and manager of Barlow's refused to allow the inspection because the compliance officer was not acting under the authority of a search warrant. In the *Barlow's* case, the compliance officer did not have any cause, probable or otherwise to believe that a violation of the Act existed. And, he was not acting on the complaint of any employee of Barlow's. As a result of the refusal, the Secretary petitioned the Court for an order compelling entry, inspection and investigation. At the show cause hearing, the inspection order was issued by the district court. Subsequently, when the order was presented to the president of Barlow's, he again declined to authorize the inspection. The next day, the plaintiff filed the action with a three-judge Idaho court, seeking to enjoin enforcement of the Act on the ground it was repugnant to the Fourth Amendment, and he further requested a temporary restraining order. The issue which was addressed by the *Barlow's* Court was whether the entry and inspection provisions of OSHA are consistent and compatible with the dictates of the Fourth Amendment.

The crucial factual distinctions from the present action to the *Barlow's* case are that no search warrant was sought in the *Barlow's* case; no probable cause existed, and the Secretary was proceeding under a motion to compel inspection. In the *Empire Steel* case, there was evidence of probable cause presented to a magistrate and a search warrant issued. The Secretary has employed a "suspenders and belt" approach in this case by requesting an order from the Court compelling the inspection in addition to having obtained a search warrant. But the Secretary's approach, though ostensibly duplicitous, cannot be discounted for that reason alone.

The *Barlow's* Court found that the warrantless inspection provisions authorized under OSHA were controlled by the *Camara* and *See* line of cases. The Court adopted the reasoning employed in *Brennan v. Gibson's Products, supra*, with a major exception. It declined to follow the *Gibson's Products* case in that:

"While we adopt, in general, the similar reasoning employed there, we decline the invitation to judicially redraft an enactment of Congress. Unlike the *Gibson's Products* court, we cannot accept the proposition that the language of the OSHA inspection provisions envision the requirement that a warrant be obtained before any inspection is undertaken. Certainly, Congress was able, had it wished to do so, to employ language declaring that a warrant must first be obtained, the procedures under which it is to be obtained, and other necessary regulations. Congress did not do so and we refuse to accept that duty." *Barlow's, Inc. v. Usery, supra* at 441.

In holding the inspection provisions of the Act which authorize warrantless inspections in violation of the Fourth Amendment, the *Barlow's* Court apparently struck 29 U.S.C. § 657(a) down as being facially unconstitu-

tional. The holding, however, is not entirely clear. A close reading of the case indicates that what the Court struck, in language which would void the entire statutory scheme, was the procedure whereby the Secretary upon being refused entry for a warrantless search, when no probable cause existed, could go to the Court and seek an order compelling the warrantless inspection by the Court's authority.

In essence, the *Barlow's* Court refused to construe § 8(a) of the Act as having an unwritten condition precedent that the Secretary obtain prior court authorization before conducting *any* inspection. Such a construction is quite different from reading the statute as permitting inspections by search warrant, founded on probable cause. When read in this respect, the *Barlow's* case would not be as broad as the plaintiff in this action would make it. Such a reading requires the conclusion that the *Barlow's* Court was not addressing the question of the inherent authority of the magistrate or court to issue a search warrant based on probable cause to believe that violation of § 8(a) of the Act existed. Thus, while the facts and language of the *Barlow's* case would be applicable to the instant case so far as the constitutionality of the warrantless inspection provisions of OSHA, the "on its face" holding and reasoning would not extend to the question of striking the entire statutory scheme but would be limited to an "as applied" holding. A conclusion is thus compelled that

> "[The] constitutional application of the inspection provisions contained in 29 U.S.C. § 657(a) in the absence of respondent's consent is governed by the traditional administrative inspection rule embodied in *Camara* and *See*, and that petitioner, therefore, must obtain a warrant based upon a preliminary finding of 'probable cause' before being allowed to

inspect . . . [the] premises." *Usery v. Centrif-Air Machine Co., Inc.*, 424 F.Supp. 959, 962 (N.D.Ga.1977). (Footnotes omitted.)

In reaching its conclusion, the *Barlow's* Court entered summary judgment for the plaintiff. That judgment declared § 8(a), 28 U.S.C. § 657(a), unconstitutional and void in that it directly offends the Fourth Amendment. The Court enjoined the Secretary of Labor from acting pursuant to § 8(a) of the Act, in conducting or attempting to conduct any *general searches or inspections* of the nonpublic portions of the premises of the plaintiff pursuant to § 8(a) of the Occupational Safety and Health Act.[1] Again, this mandate is not directed at the question of searches done pursuant to search warrants duly issued on probable cause by a United States Magistrate or judge.

The language used by the *Barlow's* Court is in conflict with the reasoning and the ruling of the Court. The language of the judgment strikes the Secretary's statutory authority to inspect. However, the reasoning of the Court and the authority cited by the Court indicate that the Court was making a determination of the constitutional principle "as applied" to the facts of the *Barlow's* case in contradistinction to an "on its face" holding. Section 8(a) of the Act may be facially unconstitutional in every instance involving a warrantless inspection or an inspection on the order of the court where no probable cause has been shown to exist. Such a holding does not, however, proscribe reading the statute in an "as applied" sense to authorize inspections where a warrant based on probable cause has been issued. Nor does such a holding require judicial legislation.

1. Mr. Justice Rehnquist has since entered a stay of the judgment of the Court in the *Barlow's* case. Justice Rehnquist noted:

   "The proposed stay will not affect the respondent in any way, and there are no equities weighing against it which may be asserted by persons actually before the Court. In such a situation, where the decision of the

   District Court has invalidated a part of an Act of Congress, I think that the Act of Congress, presumptively constitutional as are all such Acts, should remain in effect pending a final decision on the merits by this Court." *Marshall v. Barlow's*, 429 U.S. 1347, 97 S.Ct. 776, 50 L.Ed.2d 739 (1977).

■ Although the Supreme Court has held that "it is clear, of course, that no Act of Congress can authorize a violation of the Constitution", *Almeida-Sanchez v. United States, supra,* it is equally as clear that the Court should avoid making a ruling that any Act of Congress is void on its face if the Act can be either "construed" as constitutional or if the Act can be "applied", on the face of its language, as constitutional. There are principles of constitutional adjudication which require a court to construe a statute, if possible, in a manner consistent with the Fourth Amendment. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring) (1936); *Almeida-Sanchez v. United States, supra,* 413 U.S. at 272, 93 S.Ct. 2535. A method of construction involves applying the statutory language to the facts and circumstances of a case. The language of the *Barlow's* case is that the statute in question is unconstitutional on its face. However, practically speaking, the Court ruled that the statute as applied to the *Barlow's* case is unconstitutional. In *Barlow's,* the Court saw the *Gibson* Court's determination as being a case of judicial construction and thus interpreted the holding as adding provisions to the Act which Congress did not intend. However, the *Gibson* holding was not an "as construed" holding so much as it was an "as applied" holding. Thus, *Barlow's* and *Gibson* can be reconciled. Concomitantly, deference can be shown the presumption of constitutionally valid statutes as enacted by Congress.[2]

■ The next issue raised in this action is whether orders of inspection are contemplated within the meaning of the Occupational Safety and Health Act. In the resolution of this question, the analysis set forth above with regard to the *Gibson* case and the *Barlow's* case is apropos. The conclusion that Congress intended to mean that inspection orders[3] could be authorized under the Act if no probable cause existed involves an "as construed" analysis that adds something to the statute which is not there. Both *Barlow's* and *Gibson* accurately find that the warrantless search inspection provisions of the Act violate the Fourth Amendment of the Constitution. It is equally safe to say that both would proscribe inspection orders issued by the Court when there has been no showing of probable cause that any violation of OSHA exists—orders issued solely because the owner of a premises has refused inspection.

■ The question of whether the courts have the power to issue search warrants based on probable cause is a horse of a different color. To find that the courts or magistrates have such a power does not require the engrafting of additions to the Occupational Safety and Health Act itself. Rather, such authority stems from the inherent powers of the courts as well as the duties and powers of the courts to effectuate the intent of Congress. OSHA was designed to effectuate a plan to implement safe and healthful working conditions for persons employed by industries that affect interstate commerce. The intent of Congress as manifested in the provisions, especially the inspection provisions, of the Occupational Safety and Health Act, can be implemented by applying the statute to a given set of facts in a manner consistent with the Fourth Amendment.

The third issue that must be addressed is whether magistrates have the power to issue search warrants where a person subject to the Act has previously refused the warrantless inspection. In *Camara v. Municipal Court* and the cases discussed above, the Court discussed at length the necessity of obtaining an inspection warrant under the circumstances of an administrative search. None of the statutes referred to in the cases

2. The determination made above is consistent with the holding of Judge Schwartz of the Southern District of California in the case of *Marshall v. Great Lakes Dredge and Dock Co.* (S.D.Cal. July 20, 1977). In that case, Judge Schwartz dealt only with an application for an order compelling inspection.

3. By "inspection orders" the Court does not refer to search warrants based on probable cause. The reference is, rather, to the request for court assistance to inspect when no probable cause to so act exists.

subject to those Supreme Court decisions had specific procedures for the issuance of inspection warrants. However, the Court consistently assumed the existence of such authority. In most of the OSHA cases, *supra*, as well as the administrative inspection cases, there is very strong implied authority that the courts, and the magistrates, have the power to issue warrants in carrying out the specific Acts of Congress.

A recent case from the Eastern District of Wisconsin found that magistrates do have the power to issue search warrants to assist in carrying out the purposes of the Act. *Marshall v. Chromalloy American Corporation*, 433 F.Supp. 330 (1977, E.D. Wis.) In that case, a United States Magistrate found probable cause to issue a search warrant authorizing the Secretary to conduct an inspection of Chromalloy's premises because of the high injury and illness rate in the metal-working and foundry industry. The employer had refused entry on the grounds that there had been no employee complaint or recent death or injury and that the magistrate had no authority to issue a civil warrant. In holding that the magistrate had the power to issue warrants based on probable cause in OSHA cases, the Court found:

". . . that the incorporation of all the powers and duties of the former U.S. Commissioners and of all the powers set out in the Federal Rules of Criminal Procedure grants to U.S. Magistrates the power and authority to issue warrants to federal enforcement officers such as are involved here." *Marshall v. Chromalloy American Corporation, supra.*

The facts of the present action are stronger than the facts which supported the issuance of the warrant in *Chromalloy*. Here, probable cause was based on the specification of some eighty possible violations of the Act. In *Chromalloy*, the Court was persuaded that the nature of the industry itself was sufficient, under the authority of *Camara* and *See, supra*, to establish probable cause to issue a warrant.

Each of the district courts that have addressed the question of the authority of the courts to issue warrants has found that suitable restricted inspection warrants based on probable cause may be appropriately issued under 29 U.S.C. § 657(a). See, *Brennan v. Gibson's Products, Inc. of Plano, supra; Dunlop v. Hertzler Enterprises, supra; Usery v. Centrif-Air Machine Co., Inc., supra.* The *Barlow's* Court is the exception if the plaintiff's reading of that case is correct. However, the plaintiff's reading of that case makes the Court's ruling too broad. The *Barlow's* Court did not expressly conclude that magistrates or other judicial officers are without authority to issue inspection warrants based on probable cause.

Magistrates, as well as the courts, have the power to issue a search warrant, based on a probable cause to believe a violation of the Act exists, in cases arising under the Occupational Safety and Health Act.

■ The fourth and final issue in this case is whether the search warrant itself is defective. The plaintiff argues that the warrant is stale and that it is defective in other respects. The argument is based on the proposition that because of the expiration of the time period set in the warrant, the warrant is no longer valid and any questions concerning its enforcement in the present instance are moot. Furthermore, the warrant provides that a search may be conducted in the daytime between 6:00 o'clock a. m. and 10:00 o'clock p. m., during normal working hours. Empire Steel does not have such working hours. A final factor which is not raised by the plaintiff but which is readily apparent from the face of the warrant is that the warrant authorizes a search of structures, machines, apparatus, etc., described in a complaint filed pursuant to *29 U.S.C. § 658(f)(1)*. However, a cursory look at 29 U.S.C. § 658 indicates that it contains only sections (a), (b), and (c). There is no section (f). The complaints here were filed pursuant to § 8(f)(1) of the Act, which is Title 29 U.S.C. § 657(f)(1) of the United States Code. Search warrants must be strictly construed. *United States v. Wright*, 468 F.2d 1184, 1185 (6th Cir. 1972), cert. denied, 412 U.S. 938, 93 S.Ct. 2771, 37

L.Ed.2d 397, rehearing denied, 414 U.S. 881, 94 S.Ct. 36, 38 L.Ed.2d 129. Viewed in this light, the warrant in question cannot stand.

Section 657(a)(1) of Title 29 U.S.C. does not meet constitutional muster when warrantless searches are conducted. Neither does the Act intend to have the Court authorize inspection when no probable cause has been shown, where a compliance officer seeks access to make a warrantless routine inspection. However, on a proper showing of probable cause, a magistrate has the power to authorize a search warrant to permit the compliance officer to inspect those areas where he believes, based on a magistrate's determination of probable cause, that a violation of the Act exists. The warrant that was issued in this case is defective. Therefore,

IT IS ORDERED that the temporary restraining order issue by this Court in the above-entitled action at 9:00 o'clock a. m. on April 6, 1977, be, and the same hereby is, dissolved.

IT IS FURTHER ORDERED that the plaintiff's request for preliminary and permanent injunctive relief be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the defendants' motion for an order compelling inspection be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the search warrant issued by United States Magistrate G. Todd Baugh be, and the same hereby is, quashed.

The Clerk of this Court shall, by separate document, enter judgment in accordance with this Opinion and Order.

The Clerk is further directed to notify the parties of the entry of this Order.