## AIR POLLUTION VARIANCE BOARD OF COLORADO v. WESTERN ALFALFA CORP.

No. 73–690. Argued April 25, 1974—Decided May 20, 1974

Douglas, J., delivered the opinion for a unanimous Court.

*William Tucker,* Assistant Attorney General of Colorado, argued the cause for petitioner. With him on the brief were *John P. Moore,* Attorney General, *John E. Bush,* Deputy Attorney General, and *John Brown,* Special Assistant Attorney General.

*Donald D. Cawelti* argued the cause for respondent. With him on the brief was *George D. Blackwood, Jr.*

*Edmund W. Kitch* argued the cause for the United States as *amicus curiae* urging reversal. On the brief

were. *Solicitor General Bork, Assistant Attorney General Johnson, Harriet S. Shapiro,* and *Edmund B. Clark.**

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

An inspector of a division of the Colorado Department of Health entered the outdoor premises of respondent without its knowledge or consent. It was daylight

---

*Briefs of *amici curiae* urging reversal were filed by *William J. Brown,* Attorney General, and *Richard P. Fahey* and *John Eufinger,* Assistant Attorneys General, for the the State of Ohio; and by the Attorneys General and other officials for 34 States as follows: *Evelle J. Younger,* Attorney General of California, *Robert H. O'Brien,* Assistant Attorney General, and *Nicholas C. Yost, C. Foster Knight,* and *Daniel J. Taaffe,* Deputy Attorneys General; *Gary K. Nelson,* Attorney General of Arizona; *Jim Guy Tucker,* Attorney General of Arkansas; *Robert K. Killian,* Attorney General of Connecticut; *Arthur K. Bolton,* Attorney General of Georgia; *George Pai,* Attorney General of Hawaii; *W. Anthony Park,* Attorney General of Idaho; *William J. Scott,* Attorney General of Illinois; *Richard C. Turner,* Attorney General of Iowa, and *Clifford Peterson,* Assistant Attorney General; *Vern Miller,* Attorney General of Kansas; *Ed W. Hancock,* Attorney General of Kentucky; *William J. Guste, Jr.,* Attorney General of Louisiana; *Jon A. Lund,* Attorney General of Maine; *Francis B. Burch,* Attorney General of Maryland, and *Martin A. Ferris III,* Special Assistant Attorney General; *Robert H. Quinn,* Attorney General of Massachusetts; *Frank J. Kelley,* Attorney General of Michigan; *Warren R. Spannaus,* Attorney General of Minnesota; *Clarence A. H. Meyer,* Attorney General of Nebraska; *Robert List,* Attorney General of Nevada; *Warren B. Rudman,* Attorney General of New Hampshire, and *Donald W. Stever,* Assistant Attorney General; *William F. Hyland,* Attorney General of New Jersey; *David L. Norvell,* Attorney General of New Mexico; *Louis J. Lefkowitz,* Attorney General of New York; *Robert Morgan,* Attorney General of North Carolina; *Allen I. Olson,* Attorney General of North Dakota; *Larry Derryberry,* Attorney General of Oklahoma; *Lee Johnson,* Attorney General of Oregon; *Richard J. Israel,* Attorney General of Rhode Island; *Daniel R. McLeod,* Attorney General of South Carolina; *Kermit A. Sande,* Attorney General of

and the inspector entered the yard to make a Ringelmann test [1] of plumes of smoke being emitted from respondent's chimneys. Since that time Colorado has adopted a requirement for a search warrant for violations of air quality standards.[2] At the time of the instant inspection the state law required no warrant and none was sought. Indeed, the inspector entered no part of respondent's plant to make the inspection.

A federal Act under the administration of the Environmental Protection Agency (EPA) sets certain air quality standards, 81 Stat. 485, 42 U. S. C. § 1857 *et seq.* The States have the primary responsibility to assure the maintenance of air quality standards, 42 U. S. C. § 1857c-2 (a). Yet if the EPA has approved or promulgated "an applicable implementation" plan, a State may not adopt or enforce a "less stringent" one, 42 U. S. C. § 1857d-1. There is no conflict between a federal standard and state action, the sole question presented being whether Colorado has violated federal constitutional procedures in making the inspection in the manner described.

Respondent requested a hearing before Colorado's Air Pollution Variance Board. The Board held a hearing

---

South Dakota; *David M. Pack*, Attorney General of Tennessee; *John L. Hill*, Attorney General of Texas; *Chauncey H. Browning, Jr.*, Attorney General of West Virginia; *Robert W. Warren*, Attorney General of Wisconsin, and *Theodore L. Priebe*, Assistant Attorney General.

[1] This test is prescribed by Colo. Rev. Stat. Ann. § 66-29-5 (Supp. 1967). It requires a trained inspector to stand in a position where he has an unobstructed view of the smoke plume, observe the smoke, and rate it according to the opacity scale of the Ringelmann chart. The person using the chart matches the color and density of the smoke plume with the numbered example on the chart. The Ringelmann test is generally sanctioned for use in measuring air pollution. See cases collected in *Portland* v. *Fry Roofing Co.*, 3 Ore. App. 352, 355-358, 472 P. 2d 826, 827-829.

[2] Colo. Rev. Stat. Ann. § 66-29-8 (2) (d) (Supp. 1969).

and found that respondent's emissions were in violation of the state Act.[3] While the test challenged here was made on June 4, 1969, the Board after noting that Colorado's Health Department had been in conference with respondent "in regard to its air pollution violations since September, 1967," after approving the readings made by the field inspector on the day in question, and after holding that tests submitted in rebuttal by respondent were not acceptable, denied a variance and entered a cease-and-desist order. Respondent sought review in the District Court for Weld County which set aside the Board's decision. The Colorado Court of Appeals affirmed, 510 P. 2d 907; and the Supreme Court denied certiorari.

The petition for certiorari which we granted, 414 U. S. 1156, raised three questions, presenting in differing postures questions under the Fourth Amendment, made applicable to the States by the Fourteenth. *Mapp* v. *Ohio*, 367 U. S. 643.

The main thrust of the opinion of the Court of Appeals is directed at the Fourth Amendment problem. It held' that under *Camara v. Municipal Court*, 387 U. S. 523, and *See v. City of Seattle*, 387 U. S. 541, the act of conducting the tests on the premises of respondent without either a warrant or the consent of anyone from respondent constituted an unreasonable search within the meaning of the Fourth Amendment. We adhere to *Camara* and *See* but we think they are not applicable here. The field inspector did not enter the plant or offices. He was not inspecting stacks,[4] boilers, scrubbers,

---

[3] The Air Pollution Variance Board, after the Division of Administration, Colorado Department of Health, had issued a cease-and-desist order, received a request from respondent for a hearing which was granted and held September 11, 1969.

[4] EPA studies indicate that tests of stacks are expensive and may require 300 man-hours of skilled work. 39 Fed. Reg. 9309. And

flues, grates, or furnaces; nor was his inspection related to respondent's files or papers. He had sighted what anyone in the city who was near the plant could see in the sky—plumes of smoke. The Court in *Hester* v. *United States*, 265 U. S. 57, 59, speaking through Mr. Justice Holmes, refused to extend the Fourth Amendment to sights seen in "the open fields." The field inspector was on respondent's property but we are not advised that he was on premises from which the public was excluded. Under the Noise Control Act of 1972, 86 Stat. 1234, 42 U. S. C. § 4901 *et seq.* (1970 ed., Supp. II), an inspector may enter a railroad right-of-way to determine whether noise standards are being violated. The invasion of privacy in either that case or the present one, if it can be said to exist, is abstract and theoretical. The EPA regulation for conducting an opacity test requires the inspector to stand at a distance equivalent to approximately two stack heights away but not more than a quarter of a mile from the base of the stack with the sun to his back from a vantage point perpendicular to the plume; and he must take at least 25 readings, recording the data at 15- to 30-second intervals. Depending upon the layout of the plant, the inspector may operate within or without the premises but in either case he is well within the "open fields" exception to the Fourth Amendment approved in *Hester*.

The Court of Appeals went on to say that since respondent was not aware that the inspector had been on the premises until the cease-and-desist notice, the hearing it received "lacked the fundamental elements of due process of law, since the secret nature of the investiga-

---

see Schulze, The Economics of Environmental Quality Measurement, 23 J. Air Poll Control Assn. 671 (1973); 40 CFR § 60.85, Method 9.

tion foreclosed Western from putting on any rebuttal evidence."[5]

Whether the Court referred to Colorado "due process" or Fourteenth Amendment "due process" is not clear.[6] If it is the former, the question is a matter of state law beyond our purview. Since we are unsure of the grounds of that ruling we intimate no opinion on that issue. But on our remand we leave open that[7] and any other questions that may be lurking in the case.

*Reversed and remanded.*

---

[5] 510 P. 2d, at 909.

[6] In the District Court's opinion it is said that one challenge to the hearing before the Variance Board was "whether or not due process of law and equal protection of the law contrary to the 14th Amendment of the Constitution of the United States and Section 25, Article 2 of the Constitution of the State of Colorado was denied" by the Board. App. 136.

[7] See *California* v. *Krivda,* 409 U. S. 33; *Department of Mental Hygiene* v. *Kirchner,* 380 U. S. 194; *Minnesota* v. *National Tea Co.,* 309 U. S. 551.