**Walter Jay Skinner**
**United States District Judge**

**UNITED STATES of AMERICA**
**Appellee**

**BERKSHIRE BEAGLE CLUB**
**Appellant**

**M.B.D. No. 80-24-F**
**(Mag. No. 78-0011M-11)**

United States District Court
Commonwealth of Massachusetts

**August 5, 1981**

**Joan C. Stanley, Asst. U.S. Attorney,** counsel for plaintiff
**William B. Barry**, counsel for defendant

## MEMORANDUM

**FREEDMAN, D.J.** After denial of its motion to suppress evidence, defendant was convicted at trial before the Magistrate of unlawfully taking or permitting the taking of a migratory bird in violation of 16 U.S.C. sec. 703. Appellant now seeks review of that conviction, and assigns as error the Magistrate's failure to suppress the leg-hold bird traps seized from its premises. The scope of this Court's function on appeal is set out in Rule 8(d) of the Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates:

> The defendant shall not be entitled to a trial **de novo** by the Judge of the district court. The scope of appeal shall be the same as on an appeal from a judgment of a district court to a court of appeals.

### I.

On or about December 12, 1978, Massachusetts Natural Resource Officer Allan McGroary was notified by an official of the Massachusetts' Audubon Society that a Great Horned Owl had been found in a leg-hold trap.[1] The Great Horned Owl is apparently a species protected under 16 U.S.C. sec. 703.

For reasons that do not appear on the record, McGroary quickly focused his investigation on the Berkshire Beagle Club, going to the Club premises on December 18, 1978. Those premises

---

[1] McGroary was also a special agent of the United States Fish and Wildlife Service.

consist of a clubhouse on a two-hundred acre site, all surrounded by a 1 1/4" wire mesh fence approximately five feet high. The fence is posted with "No Trespassing" signs.

McGroary gained access to the premises by opening an apparently unlocked gate. Once on the grounds, he located four leg-hold traps. McGroary thereupon left the premises but returned later that same day to seize the traps. He was unable to do so because the traps were firmly mounted on poles. McGroary therefore returned the following day, December 19, 1978 with cutting equipment, photographed the traps, and seized them. He also located, photographed, and seized a fifth trap.

The parties stipulated to the following facts:

    1. The land in question on which was found certain leg-hold traps was in fact owned by Berkshire Beagle Club, Inc.

    2. Berkshire Beagle Club, Inc. is a non-profit Chapter 180 corporation.

    3. That a 1 1/4" wire mesh fence, approximately five feet high surrounds the property of the defendant located in Richmond, Massachusetts.

    4. The leg-hold traps allegedly seized by agents of the United States of America were not in plain view. Agents had to enter the defendant's property to observe the traps.

    5. Four visits were made to the defendant's property by agents of the United States between the days of December 18, 1978 and December 23, 1978.[2]

    6. That the leg-hold traps seized by the agents of the United States of America were taken during a routine investigation and not while in so-called hot-pursuit or to prevent the destruction of evidence.

The evidence adduced at the hearing on the motion to suppress further reveals that at no time did McGroary have permission to go on the property of the defendant nor did he at any time endeavor to secure a search warrant. At the close of this hearing, the Magistrate ruled that McGroary's search fell within the "open field" exception to the Fourth Amendment's warrant requirement. The Magistrate also ruled that McGroary had statutory authority to go on to private property in the performance of his duties. The defendant was subsequently found guilty of the offense, was fined $250 and took a timely appeal.[3]

## II.

### A.

The claim of statutory authority to enter the defendant's premises is readily dealt with. Under the relevant provisions of G.L. c. 21, sec. 6D:

    The secretary, the director and his assistants, natural resource officers and deputies may in the performance of their duties enter upon and pass through or over private property or lands whether or not covered by water, and may keep or dispose of sick, injured or helpless fish, birds or mammals, that may come into their possession, subject to such rules and regulations as the director, with the approval of the secretary, is hereby authorized to adopt.

At first glance, the entry effected by McGroary does not appear to have

---

[2] On his fourth visit on December 23, 1978, McGroary encountered and interviewed Club members in the clubhouse. There is no suggestion that he secured more evidence on this occasion.

[3] After the appeal in this case was taken, the original file was apparently lost in transit between the Magistrate and the District Court. It has now been submitted on a partially reconstructed record, by consent of the parties. The Findings and Judgment of the Magistrate are part of that record, but all Exhibits are missing.

exceeded his statutory authority. See, **Thurlow v. Crossman,** 336 Mass. 248, 143 N.E. 2d 812 (1957). However, the Massachusetts Supreme Judicial Court has determined that, as a matter of policy, natural resource officers (''NROs'') making inspections or entries upon land should obtain a search warrant in the absence of exigent circumstances. **Commonwealth v. Colella,** 273 N.E. 2d 874 (1971).

Where, as here, there were no exigent circumstances, and where the record suggests that McGroary entered the premises solely for the purpose of searching for and seizing leg-hold traps, I believe that McGroary exceeded his statutory authority by proceeding without a warrant.

B.

The government also relies upon the ''open fields'' doctrine to support admissibility of the leg-hold traps. As first enunciated in **Hester v. United States,** 265 U.S. 57 (1924), this doctrine holds that ''the special protection accorded by the Fourth Amendment . . . is not extended to the open fields.'' **Id.,** 59.

**Hester** does not clearly establish whether the open fields are altogether beyond the protection of the Fourth Amendment, or whether there is an exception to the Fourth Amendment for searches of open fields. The Supreme Court has subsequently ruled, in **Katz v. United States,** 389 U.S. 347 (1967), that ''the Fourth Amendment protects people, not places.'' **Id.,** 351. It went on to state that ''searches conducted outside the judicial process, without prior approval by judge or magistrate, are **per se** unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'' **Id.,** 357 (footnotes omitted). However, neither **Hester** specifically nor the ''open fields'' doctrine generally, were cited among the admittedly brief listing of exceptions.

Perhaps more significantly, though,

Justice Harlan in his concurrence in **Katz** set out an analytic framework that has proved most useful in this area. ''My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy, and second that the expectation be one that society is prepared to recognize as 'reasonable.' '' **Id.,** 361.

Subsequently, the Court in **Rakas v. Illinois,** 439 U.S. 128 (1978) indicated that ''even a property interest in premises **may** not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon.'' **Id.,** 143 n. 12 (emphasis added). **Hester** is cited as support for this proposition. On the other hand, the Court has also intimated that there may well be a legitimate expectation of privacy, to which Fourth Amendment protections would attack, with respect to premises from which the general public is excluded. **Air Pollution Variance Board v. Western Alfalfa Corporation,** 416 U.S. 861, 865 (1974), (also **citing Hester**).

In application, the ''open fields'' doctrine has reflected the underlying conceptual uncertainty regarding its relation to the Fourth Amendment. Courts have held that truly open (i.e. unfenced) fields surrounding a house are not protected by the Fourth Amendment. **United States v. Ramapurum,** 632 F.2d 1149 (4th Cir. 1980); **United States v. Williams,** 581 F.2d 451 (5th Cir. 1978). The curtilage of a dwelling, including open areas and related structures is, however, considered to fall within the protection of the Fourth Amendment.[4] **United States v. Williams, supra.**

---

[4] The government suggests that the absence of a dwelling on defendant's premises obviates the need for a search warrant I do not accept this reasoning for, as stated in **Katz, supra,** "the Fourth Amendment protects people, not places." Id., 351 In Katz, the Court suppressed evidence gathered by electronic surveillance of a telephone booth

The common thread of these cases, to the extent that one can be separated from the unique factual situations reflected therein, is that if **Hester** is to have any continuing vitality it must be read in conjunction with **Katz** in order that the term "open fields" might be given meaning. In determining whether the defendant's premises constitute "open fields," I must properly look to whether or not defendant had a reasonable expectation of privacy in those premises.

In essence then, the inquiry here must be: (a) whether the defendant had a subjective expectation of privacy, and (b) whether that expectation was reasonable. See, **Katz, supra,** 361 (Harlan, J. concurring).

It seems clear beyond question that the defendant manifested a subjective expectation of privacy by going to the expense of surrounding its premises with a five-foot high fence, and posting "No Trespassing" signs along that fence. Short of posting guards, it is hard to see how the defendant could have given any clearer statement of its intent to exclude others from the premises.

The reasonableness of that expectation poses quite another question. At the outset, it would seem clear that at least the clubhouse and some adjoining property should be protected under the Fourth Amendment. See, **Marshall v. Barlow's, Inc.,** 436 U.S. 307, 311 (1978) (warrant clause protects commercial buildings as well as private homes). Moreover, it now appears that the Supreme Court recognizes that there is a reasonable and protectable interest in outdoor areas from which the public is excluded. See, **Air Pollution Variance Board v. Western Alfalfa Corporation, supra,** 865. The Court in **Air Pollution Variance Board** specifically distinguishes between "premises from which the public is excluded" and the "open fields subject to search by virtue of **Hester.**" **Id.**

I am thus satisfied that the defendant had a reasonable expectation of privacy in its fenced premises as against the general public. Of course, a NRO is not a member of the general public and has a statutory right to enter private property in the performance of his duties (i.e. when acting pursuant to G.L. c. 21, sec. 6D). It would be unreasonable for the defendant to expect that no NRO would ever enter the premises while carrying out his routine duties. I express no opinion of the result that would have followed if, once lawfully on the premises, McGroary had chanced across leg-holds traps in plain view. However, that was not the case here. McGroary was not acting pursuant to authority of G.L. c. 21, sec. 6D when he entered the premises for the sole purpose of searching for and seizing leg-hold traps.[5] See, **Commonwealth v. Colella, supra,** 273 N.E. 2d at 878; see Part II, A, **supra.** The defendant could reasonably have expected that McGroary would not have entered its premises in contravention of **Colella.**

## Conclusion

Because the search of defendant's premises and the resulting seizure of leg-hold traps by NRO McGroary neither was authorized by statute, nor fell within an exception to the Fourth Amendment warrant requirement, the evidence secured thereby must be suppressed. The case shall be remanded for further proceedings not inconsistent with this decision.

An appropriate order shall issue.

**Frank H. Freedman**
**United States District Judge**

---

[5] I also have serious and independent doubts about the propriety of seizing the traps without a warrant. Even assuming that the search was proper, leg-hold traps are not contraband. **See, e.g.,** G.L. c. 131, § 38. The traps were also firmly affixed to the pole, requiring cutting tools to remove, and thus were not abandoned. Moreover, in order to procure cutting tools, McGroary had to leave the premises and in fact did not return until the next day to seize the traps. This factor would seem to obviate any issue of exigency.

## ORDER

**FREEDMAN, D.J.** This matter came before the Court on appeal of a conviction for violating 16 U.S.C. sec. 703. After conference, and after review of the extant record, and for the reasons set out in an accompanying Memorandum, the judgment of the Magistrate is reversed and the matter remanded for further proceedings not inconsistent with this decision.

So ordered.

**Frank H. Freedman**
**United States District Judge**