**UNITED STATES of America, Plaintiff,**

v.

**Kenneth COBLER, Defendant.**

**Crim. No. 81–00059–R.**

United States District Court,
W. D. Virginia,
Roanoke Division.

March 2, 1982.

Thomas J. Bondurant, Asst. U. S. Atty., Roanoke, Va., for plaintiff.

William G. Davis, Rocky Mount, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

### I. INTRODUCTION

The United States has charged the defendant, Kenneth Cobler, with conspiracy to transport, possess, and transfer untaxed distilled spirits, and the substantive count of possessing approximately 450 gallons of untaxed distilled spirits in violation of Title 26, United States Code, Section 5604(a)(1). On January 13, 1982, this court held evidentiary hearings on a defense motion to suppress evidence seized by the Government and State agents. The relevant facts relating to this seizure are summarized below.

### II. FACTS

On May 17, 1981, the Government and State agents engaged in the surveillance of two vehicles suspected of transporting illegal moonshine whiskey. At 8:45 P.M., on this evening in May, 1981, the agents observed a green 1967 Chevrolet pickup truck driven by John R. Jamison leaving a still site in Henry County, Virginia, with a suspected load of whiskey. Pursuant to a radio message from agents at the site, Virginia ABC Agent William Leonard intercepted

the truck and followed it on Route 657 to the intersection of Routes 657 and 663 in Henry County, Virginia. At this point, the truck turned onto Route 663, a dead-end road.

At 8:14 P.M. on the same evening, the defendant was observed driving a tan and white 1972 Dodge pickup truck in Franklin County, Virginia. The truck was owned by the defendant's brother-in-law, and contained a camper shell over the bed of the truck. The truck proceeded on Route 657 ten or eleven miles to the intersection of Route 657 and 663 in Henry County, Virginia. At approximately 8:35 P.M., ABC Agent Leonard observed the defendant turn left onto Route 663, the same road taken by Mr. Jamison in the Chevrolet pickup. Mr. Leonard recognized the defendant as the driver of the Dodge truck from having seen him in possession of the vehicle on several prior occasions. After turning, the defendant proceeded on Route 663 over a hill out of the agent's sight.

After both vehicles entered Route 663, the law enforcement officers blocked the road at the point where the state maintained pavement ends. According to testimony, Virginia Secondary Route 663 is state maintained for approximately one-half mile from Route 657, and the continuation of Route 663 is a private country farm road which goes to farm land and an old abandoned house. Both the private and public roads dead end on property owned by Ms. Missouri Walker. Ms. Walker testified that the land is leased to Abraham Cobler, the defendant's father, and is primarily used for agricultural purposes.

At approximately 9:30 P.M., the 1967 Chevrolet was stopped as it attempted to leave the farm. Its driver, John Jamison, escaped two times through nearby woods before he was brought under control. With Jamison subdued, the officers searched the Chevrolet truck and discovered one gallon of moonshine in the glove box. Additionally, the agents smelled the strong odor of moonshine whiskey and discovered that liquor had spilled over into the bed of the truck.

Upon completing this discovery, ATF Agent Kenneth Kragh found the 1972 Dodge pickup approximately 150–200 yards down the road from the Chevrolet truck. The truck was parked on a dirt farm path which surrounded the edge of an open field. Upon approaching the truck, Agent Kragh found that the Dodge was unoccupied with the cab unlocked and the camper shell locked. Additionally, the locked camper shell had curtains all around the windows. At this time, it was dark and there was no natural or artificial light other than a flashlight possessed by Agent Kragh.

At the rear of the camper shell, Agent Kragh detected the odor of moonshine whiskey. With the aid of his flashlight, the agent discovered a crack in the curtains, 1½ to 2 inches wide, where the curtains had not completely fallen down over the lower right corner of the rear window of the camper shell. Through this crack, Agent Kragh was easily able to see stacked, one gallon plastic jugs containing a clear substance. Relying upon his past experience and the odor surrounding the rear of the truck, the agent concluded that the jugs contained moonshine. He proceeded to jerk open the locked back door of the camper shell, and determined that the truck contained 450 one-gallon jugs of untaxed distilled spirits.

The evidence showed that at least five families lived on Virginia Secondary Route 663 near the field where both pickups were seized and the liquor confiscated. The defendant, seen earlier driving the 1972 Dodge pickup by ABC Investigator Leonard, was not found in a subsequent search at the scene.

Based on these facts, the defendant argues that the 450 gallons of moonshine should be suppressed because he had a reasonable expectation of privacy in the Dodge truck. The Government contends that Cobler lacks standing to contest the validity of the search and, even if he has standing, the search is legal under the plain view doctrine.

### III. LAW

While both the Government and the defendant have addressed the issues of

standing and lack of any reasonable expectation of privacy, the court finds such a bifurcated analysis unnecessary. Under the Supreme Court's direction in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) and *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), "the two inquiries [of standing and of substantive Fourth Amendment protection] merge into one: whether governmental officials violated any legitimate expectation of privacy . . . ." *Rawlings v. Kentucky*, 448 U.S. at 106, 100 S.Ct. at 2562. Therefore, "it devolves on one seeking suppression of incriminating evidence to establish as a threshold matter the existence of a reasonable expectation of privacy in the area searched." *United States v. Ramapuram*, 632 F.2d 1149, 1154 (4th Cir. 1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

■ At the outset the court assumes that the defendant had an actual expectation of privacy in the camper and bed of the truck. Cobler had a possessory interest in the truck by virtue of his continual use of it, *Patler v. Slayton*, 503 F.2d 472, 478 & n.4 (4th Cir. 1974), notwithstanding the fact that he borrowed the truck from the title owner. Further, the act of locking the camper top was an effective expression of the defendant's expectation of privacy. *United States v. Pressler*, 610 F.2d 1206, 1213–14 (4th Cir. 1979).

■ However, the court does not conclude that Cobler's actual expectation of privacy was legitimate, reasonable, or justifiable. Initially the court cannot ignore the fact that the place searched was an automobile. Not all places enjoy, in the eyes of society and the law, the same legitimate or reasonable expectation of privacy. While one's dwelling and its curtilage have "ordinarily been afforded the most stringent Fourth Amendment protection," *United States v. Martinez—Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976), "an individual's expectation of privacy in his automobile is less than in other property." *United States v. Bellina*, 665 F.2d 1335, at 1340 (4th Cir. 1981) (quoting

from *United States v. Michael*, 645 F.2d 252, 257 (5th Cir.) (en banc), *cert. denied*, —— U.S. ——, 102 S.Ct. 489, 70 L.Ed.2d 257 (1981). As the Supreme Court has noted:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects . . . . It travels public thoroughfares where both its occupants and its contents are in plain view.

*United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977) [quoting from *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion)]. Such a rule of diminished expectation of privacy is particularly appropriate when the automobile is located in a place such as an open field. *United States v. Bellina*, 665 F.2d 1335, at 1340. *See also Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *United States v. Brown*, 487 F.2d 208 (4th Cir. 1973), *cert. denied*, 416 U.S. 909, 94 S.Ct. 1617, 40 L.Ed.2d 114 (1974).

■ However, notwithstanding any characterization of the property involved as a house or an automobile, "one has no legitimate expectation of privacy in any object whether it be in the home or a car . . . if that object be exposed to plain view." *United States v. Bellina*, 665 F.2d 1335, at 1341. There are at least three prerequisites to the availability of the plain view exception, namely, that the officer look into the automobile (1) from a vantage point where he has a legal right to be, (2) that the contraband be in plain view, and (3) that its discovery be inadvertent. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ First, the officer's presence at the vantage point from which he discovers the evidence in plain view "must not amount to an unjustifiable intrusion into an area with respect to which defendant's expectations of privacy are protected by the fourth amendment." *United States v. Bradshaw*, 490 F.2d 1097, 1100 (4th Cir. 1974). Apply-

ing this statement to the facts of this case, the court must determine whether the defendant had a protected expectation of privacy in the field from which the officers observed the contraband in the truck. The court concludes that he did not. No Fourth Amendment protection extends to sights seen in the open fields. *See Air Pollution Variance Bd. v. Western Alfalfa*, 416 U.S. 861, 865, 94 S.Ct. 2114, 2115, 40 L.Ed.2d 607 (1974); *Hester v. United States*, 265 U.S. at 59, 44 S.Ct. at 446; *United States v. Brown*, 487 F.2d at 210. Accordingly, if the object of the agent's search had been the defendant's truck, rather than the contents of the camper, the defendant could not be heard to complain of the trespass by the agents to ascertain the identity of the truck. Similarly, the defendant cannot complain that the agents were not legitimately on the premises because they had to commit a trespass to look into the window of the camper. *United States v. Jackson*, 585 F.2d 653, 659 (4th Cir. 1978). The prohibition in the Fourth Amendment is against unreasonable searches and seizures, not trespasses *per se*. *Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); *United States v. Jackson*, 585 F.2d at 659. If the trespass represents an invasion of a defendant's reasonable expectation of privacy, such as his home or curtilage, then it is relevant at a suppression inquiry. However, where, as here, the trespass occurs upon private property constituting an "open field," there is no such reasonable expectation of privacy in the property. *United States v. Bellina*, 665 F.2d 1335, at 1343, n.7; *United States v. Ramapuram*, 632 F.2d at 1155; *United States v. Jackson*, 585 F.2d at 659–60; *United States v. Johnson*, 561 F.2d 832, 845–46 (D.C.Cir.) (Leventhal, J., concurring), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977).

The defendant offers *United States v. Bradshaw*, 490 F.2d 1097 (4th Cir. 1974) to support his claim that the officers made an unlawful intrusion on the property to which the defendant had a reasonable expectation of privacy. The defendant contends that the vehicle was parked on property which was leased by he and his father.[1] However, as previously discussed, all observations made on private property are not invalid. "Each intrusion must be examined on its peculiar facts and each must be analyzed in relation to whether the person challenging the intrusion had a legitimate expectation of privacy in the area or thing observed." *United States v. Bellina*, 665 F.2d 1335, at 1343, n.7 (4th Cir. 1981). In *Bradshaw*, the court addressed the legitimacy of a warrantless search of a truck parked on the defendant's property next to his home. The officer, while proceeding to the rear of the home for the justifiable purpose of interrogating the defendant, smelled moonshine whiskey emanating from the parked truck. The officer proceeded to the rear of the truck, looked through a crack in the back swinging doors, and observed a large quantity of one gallon plastic jugs containing a white liquid, later determined to be moonshine liquor. The Fourth Circuit Court of Appeals excluded the evidence from the search, holding that the officer could not have made his observation

> without exceeding the original purpose of his intrusion, which had justified his presence on defendant's property up to that point, and making a further intrusion into an area of protected privacy. Objects lying in the bed of the truck could not be seen except by someone who took special pains to look through the crack. *The truck was parked on defendant's property very near to his residence. Under such circumstances, the defendant had a reasonable expectation that the*

---

1. The evidence is by no means conclusive on this point. From the testimony given, it can only be concluded that the defendant's father leased the land, while the defendant delivered the necessary rent payments and performed the farming labor. There is no proof that the defendant and his father held the lease through a partnership, or that the defendant contributed

monetarily to the payment of the rent. Therefore, it appears that the defendant was no more than an occasional occupant of the land. However, determination of ownership is unnecessary since the property constituted an open field. *See United States v. Ramapuram*, 632 F.2d 1149 (4th Cir. 1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

*contents of the truck would remain unknown to the general public.*

*Id.* at 1101 (emphasis added). In effect, *Bradshaw* applies to preclude a finding of "plain view" only when contraband is "observ[ed] by police officers from a point on defendant's property into an area *within his home or its curtilage.* . . ." *United States v. Bellina,* 665 F.2d 1335, at 1344 (4th Cir. 1981). *Accord, United States v. Newbourn,* 600 F.2d 452, 457 (4th Cir. 1979).

In this case, however, the search did not occur into an area within the defendant's house or curtilage, but rather, arose in an open field on property leased by the defendant's father. Additionally, the search took place within an automobile, with its attendant lesser expectation of privacy. *United States v. Ramapuram,* 632 F.2d at 1155–56. It is sufficient here to observe that whatever expectation of privacy attends a locked "effect", it is greatly diminished where the effect is an automobile, the contents are visible from outside the automobile, and the observer stands "in an area totally without the protection of the Fourth Amendment such as an open field." *Ramapuram,* 632 F.2d at 1155.

Furthermore, the court is not persuaded that the contents of the truck camper were not in plain view or that their discovery was not inadvertent. The Government's uncontradicted evidence at the suppression hearing showed that although there were curtains over the windows of the camper shell, they did not cover the lower right rear corner of the window. It is through a remaining 1½ to 2 inch "crack" in the curtains that the ATF agent "eas[il]y" observed one gallon plastic jugs filled with a clear substance. Record, Hearing, at 43. Such a factual scenario is identical to that addressed recently by the Fourth Circuit in *United States v. Bellina,* 665 F.2d 1335 (4th Cir. 1981). The court in *Bellina* addressed the "plain view" observations made by an officer into the interior of a plane parked and left in a public parking lot of a public airport. Finding that the officer had no difficulty looking through the window of the plane since the curtains were partially open, the court held the plane was "not an object in which it could be said a party has a legitimate expectation of privacy." *Id.* at 1344. Accordingly, this court holds that a truck parked in an open field with the curtains on its camper windows partially open is not an object in which the defendant has a reasonable expectation of privacy.

Such a finding is further strengthened by the fact that the smell of the strong odor of contraband is sufficient to place the contraband in plain view, that is, "obvious to the senses." *United States v. Sifuentes,* 504 F.2d 845, 848 (4th Cir. 1974). *See also United States v. Haley,* 669 F.2d 201 (4th Cir. 1982); *United States v. Haynie,* 637 F.2d 227 (4th Cir. 1980). In *United States v. Haynie,* the officers detected the odor of marijuana emanating from the trunk of a car contemporaneously with their arrest of the defendants. Refusing to decide whether the automobile exception to warrantless searches applied, the court held:

Being where [the officers] had a right to be, they not only smelled marijuana, they observed it on the rear bumper of the car in plain view. This gave them the right to open the trunk of the Duster to search for it. We think there is no distinction between the marijuana in sight on the bumper and that smelled in the trunk. Both were in plain view within the meaning of the Fourth Amendment if they were obvious to the senses. *Sifuentes,* p. 848.

637 F.2d at 234. Similarly, the agents in this case gave uncontradicted testimony that they smelled the moonshine liquor coming from the camper. Record, Hearing, at 47. Thereafter, the agents looked into the crack in the curtains and observed the clear containers. Accordingly, by virtue of the odor and observation of the containers, the contraband moonshine whiskey was in "plain view."

The defendant complains that the agent could not have identified the clear substance without first improperly "searching" the one gallon jugs. However, it is only necessary that an officer be able to infer

the contents of the container from its outward appearance, distinctive configuration, transparency or other characteristics, *see Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), and/or identify the odor given off by the contents of the container. *See United States v. Haley,* 669 F.2d 201, at 203 (4th Cir. 1982). In this case, the officer conducting the observation and seizure of the moonshine liquor had eight years experience with the ATF in investigating moonshine operations. On this occasion, the officer recognized containers normally used in packaging moonshine, as well as the distinctive odor coming from the camper. There is no doubt that the officer identified the substance of the containers in light of his experience and these facts.

The defendant's remaining contentions are similarly without merit. "The inadvertent requirement (if it exists at all) does not attach to contraband," *Coolidge v. New Hampshire,* 403 U.S. at 472, 91 S.Ct. at 2041; *United States v. Bellina,* 665 F.2d 1335, at 1346 (4th Cir. 1981), and what was involved here was contraband. Additionally, the ATF agent's use of a flashlight to discover the contraband does not invalidate the plain view seizure. *United States v. Dorr,* 636 F.2d 117 (5th Cir. 1981); *United States v. Coplen,* 541 F.2d 211 (9th Cir. 1976) (both cited with approval in *Bellina,* at 1343–1344). Finally, the court finds that it was not necessary for the officers in this case to obtain the consent of the truck owner to complete the search since the search was plainly justified by the officer's observation and identification of contraband in the camper. *Bellina,* at 1346.

## IV. CONCLUSION

In light of the factors discussed herein, the court hereby finds that the defendant had no reasonable expectation of privacy in the truck or its contents. Therefore, the defendant's motion to suppress the evidence from the search thereof is hereby denied.