Michael Wayne CARTER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 83–1456–WA.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1983.

Decided March 15, 1984.

Rehearing Denied April 19, 1984.

W. Asa Hutchinson, U.S. Atty., Fort Smith, Ark., for appellee.

Thomas A. Martin, Jr., Jasper, Ark., for appellant.

Before HEANEY and McMILLIAN, Circuit Judges, and COLLINSON Senior District Judge.[*]

COLLINSON, Senior District Judge.

The appellant, Michael Wayne Carter, was convicted after a non-jury trial in the United States District Court for the Western District of Arkansas [1] of manufacturing and possessing with intent to distribute marijuana. The indictment charged in Count I that Michael Wayne Carter on July 22, 1982, manufactured approximately 405 marijuana plants, and in Count II that Carter possessed with intent to distribute approximately 405 marijuana plants, and 100 pounds of marijuana, all in violation of 21 U.S.C. § 841(a)(1).

After waiving his right to a jury trial, Carter was tried by stipulation and evidence before the court on January 20, 1983, and found guilty on both counts. He was sentenced to two years' imprisonment on both counts, the sentences to run concurrently, and was fined $1000 on Count I. The court further ordered the defendant to serve a special parole term of two years.

For reversal, the appellant argues that the district court erred in (1) refusing to suppress all evidence seized pursuant to a search warrant issued on July 21, 1982, and executed on July 22, 1982, (2) refusing to suppress evidence garnered pursuant to a second search warrant issued on July 22, 1982, and (3) holding that the burden of proof was on the defendant to prove the legality of a previous warrantless search.

The Federal Bureau of Investigation began an investigation of Carter's activities on July 10, 1982, after receipt of information that marijuana was being grown on the defendant's rural property. A search warrant for this property was issued by the

---

[*] The Honorable William R. Collinson, Senior District Judge, Eastern and Western Districts of Missouri, sitting by designation.

[1.] The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

United States magistrate [2] on July 21, 1982, on the basis of the following statements in an affidavit made by FBI Special Agent Jack Knox:

On July 10, 1982, a confidential source advised SA Jack D. Knox that Michael Wayne Carter of Newton County, Arkansas, was in the process of growing marijuana on property occupied by Carter in Newton County, Arkansas. According to the confidential source Michael Wayne Carter resided in a mobile trailer, light in color with a female companion and cultivated, cared for and tended a marijuana field located north of the trailer approximately 50 yards. This field having the dimensions of 150 feet × 100 feet approximately, enclosed inside a barbed wire fence consisting of 10 strands of barbed wire, plastic water lines are located on the property leading in the direction to the enclosed field and emanating from a spring approximately 50 yards east of the trailer. On July 15, 1982, Rod Combs, Sgt. Arkansas State Police, Narcotics Division, while flying over said property observed a green vegetable matter growing in the vicinity of the trailer occupied by Michael Wayne Carter; such vegetable matter having the physical appearance of marijuana. On July 20, 1982, confidential source referred to previously advised that within the past five days marijuana plants approximately 4 to 6 feet tall were observed growing on the property occupied by Michael Wayne Carter and that at least one individual was observed tending the marijuana. Confidential source advised that the marijuana field, in addition to being enclosed by barbed wire, had what appeared to be a shotgun affixed to a tree and attached to a trip wire.

On July 20, 1982, Lt. Earl Rife, Arkansas State Police, advised that Michael Wayne Carter had been known to the Arkansas State Police for approximately three years and that information had been received indicating that Carter was involved in the growing of marijuana.

Lt. Rife has extensive experience in enforcing the laws concerning controlled substances and it has been his experience that in the mountainous areas of Arkansas, marijuana fields are located in wooded areas for security reasons and it is customary to irrigate such fields and due to the value of marijuana and the criminal nature of growing marijuana, these fields are protected by growers using various means including the use of firearms.

The confidential source referred to herein has furnished information for approximately 15 months on controlled substances, and criminal intelligence information in northwest Arkansas on at least five occasions. Such information verified where possible and this information proved to be reliable.

The search warrant was executed on July 22, 1982, by combined forces of the FBI and the Arkansas State Police. The defendant accompanied the officers during the search which disclosed 404 marijuana plants in a garden area and three trash cans containing plastic bags filled with approximately 100 pounds of marijuana. The garden area was surrounded by a ten-strand barbed wire fence approximately seven feet high. The officers also located two shotguns tied to trees with wires affixed to the triggers.

A second search warrant was obtained on July 22, 1982 for vehicles and the residence located on the Carter property. The execution of this search warrant resulted in the location of marijuana leaves contained in a cardboard box inside a van.

After indictment, the defendant moved to suppress the evidence against him on the ground that the affidavit in support of the search warrant did not provide probable cause for the issuance of the warrant. The

---

**2.** The Honorable William S. Walker, United States Magistrate, United States District Court for the Western District of Arkansas.

district court conducted a hearing on December 22, 1982, and after the testimony of Special Agent Knox, the district court denied the defendant's motion. After submitting a written waiver of his right to a jury trial, the case was tried before the district court on January 20, 1983, upon a stipulation of facts and the short testimony of Special Agent Knox. Upon conclusion of this evidence, the court found the defendant guilty on both counts contained in the indictment.

Thereafter the defendant filed a renewed motion to suppress evidence alleging that the confidential source named in the search warrant was in reality an officer of the Arkansas State Police who obtained his information by virtue of a warrantless and illegal search of the defendant's property.

The district court conducted a post-trial hearing on this renewed motion on March 30, 1983, at which Officer Rodney Combs of the Arkansas State Police and the defendant testified. Officer Combs testified that Officer Hicks of the Arkansas State Police was the informant named as the confidential source in the affidavit for the original search warrant. Combs testified that he and Hicks had walked along an electrical power right-of-way that crossed the defendant's property on May 12, 1982. Upon discovering a pump and water line and following a log road, the officers observed the marijuana growing inside the ten-strand barbed wire fence through a clearing in the heavy foliage and underbrush. They repeated their steps and saw the marijuana again on July 20, 1982. Combs further testified that there were no posted "no trespassing" or "keep out" signs on the property, that he never crossed the ten-strand fence, and that the officers were at all times 200 to 300 feet from the camper-trailer observed on the property.

Carter testified that the fence was intended to preserve his privacy. He stated that he made frequent surveys of the perimeter of the compound and saw no break in the foliage or undergrowth that would allow detection of the garden without invading the ten-strand fence. On cross examination, he further testified that hunters possibly walked onto his property and that the property was not posted with "no trespassing" signs. Both parties introduced into evidence pictures of the property which depicted its foliage and underbrush. Upon consideration of this evidence, the district court denied the defendant's renewed motion to suppress the evidence seized during the execution of the search warrants.

On appeal, the appellant first argues that the affidavit in support of the initial search warrant was inadequate to sustain a finding of probable cause for issuance of the warrant. We conclude that the affidavit provided sufficient probable cause on which to issue the search warrant under the guidelines set out by the United States Supreme Court in *Illinois v. Gates*, — U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In this recent opinion, the Supreme Court abandoned the two-pronged test under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which required a rigid scrutiny of the affidavit to determine the informant's veracity, reliability, and basis of knowledge in favor of a "totality of the circumstances approach," which deals with the probable cause standard as a practical, nontechnical concept.

In *Gates*, the Bloomingdale, Illinois, Police Department received an anonymous letter containing statements that the defendants made their living from selling drugs. The letter also contained predictions concerning the defendants' future illegal activities. Acting on this tip, officers corroborated many of the facts and a search warrant was obtained for the defendants' residence and automobile on the basis of the anonymous letter and the facts uncovered by the police investigation.

The Supreme Court noted that the honesty and reliability of the anonymous informant were unknown and his basis of knowledge unclear to the Bloomingdale police. Even in this situation, however, the

Supreme Court held that the totality of the circumstances, including the letter, its range of detail, and the corroborating facts, provided a substantial basis to conclude that probable cause to search the defendants' home and car existed.

■ The contents of the affidavit in support of the original search warrant in this case have been stated previously. The informant in this action was not anonymous but was identified as a confidential source who provided reliable information to officers in the past. The confidential source provided an explicit, detailed description of the property in question, including the color of the mobile home, the location of the marijuana field in relation to the mobile home, the dimensions of the field, the number of strands in the barbed wire fence, the existence and location of a spring, and the location of a water pipeline leading to the field. The affidavit also states that information supplied by the informant was partially verified in a flight over the defendant's property by government agents who observed a trailer and green vegetable matter having the appearance of marijuana growing in the vicinity of the trailer. The details provided by the informant were also verified as describing a typical marijuana-growing operation in the mountainous areas of Arkansas. Given the circumstances set forth in the affidavit, in particular its specific factual information, the partial corroboration by government officers, and the accurate information given by the informant in the past, the magistrate clearly had a substantial basis for concluding that a search of the defendant's property would uncover evidence of wrongdoing.

The defendant specifically argues that the affidavit was deficient because it contained no positive statement as to the confidential source's basis of knowledge or information as to the altitude of the airplane or use of visual aids such as binoculars during the aerial observation of the defendant's property. We reject these arguments. Although it could be inferred from the wording of the affidavit and its detailed factual information, that the confidential source personally observed the defendant's property, such a finding is not necessary. In *Illinois v. Gates, supra,* the Supreme Court condemned the hyper-technical examination of an informant's tip with excessive attention focused on isolated issues. Instead the Court stated that the informant's "veracity" or "reliability" and "basis of knowledge" are not to be accorded independent status, but are merely relevant considerations in assessing the totality of the circumstances. The Court noted that a deficiency in one factor may be compensated for by a strong showing as to the other factors or by some other indications of reliability. Therefore, in this action, we do not find the absence of a specific statement as to the basis of knowledge of the confidential informant fatal in light of the other underlying facts in the affidavit.

The Court also views the defendant's argument that details of the flight must be included in the affidavit as an attempt to impose overly stringent and hyper-technical requirements for the issuance of a warrant. It is sufficient that the information in the affidavit, when assessed in its totality, was sufficient to support a reasonable belief that contraband would be found on the defendant's property.

■ The defendant has made many references to the fact that the confidential source in the affidavit to support the initial search was actually Officer Hicks of the Arkansas State Police.[3] We do not condone the use of the term "confidential source" to describe an informant who is known to be a law enforcement officer, in the absence of a compelling reason. Although we view this practice as highly improper, the mere failure to reveal the name of a confidential source does not invalidate the magistrate's finding of probable cause.

---

**3.** Officer Combs testified at the post-trial hearing that another undercover investigation of the defendant was ongoing at the time that the search warrants in this case were obtained.

However, it was unclear whether a fear of jeopardizing this second investigation was the reason for the failure to reveal the name of the confidential source in the affidavit.

**940**

Because the defendant's argument regarding the first search warrant has failed, the defendant's argument concerning the legality of the second search also fails. In his brief the defendant notes that the second search was merely designed to extend the scope of the first search warrant and the defendant concedes that the second search warrant was properly issued if the initial search was legal.

The defendant's final argument concerns the possibility that the confidential source in the affidavit gathered his information through a prior illegal search of the defendant's property. As noted previously, the defendant raised this possibility in a renewed motion to suppress evidence following the trial and the court reopened the matter for an evidentiary hearing. The defendant argues that the court erred in holding that the burden of proof was on the defendant to establish the illegality of the warrantless search by Officers Hicks and Combs during which the officers uncovered evidence eventually used to obtain the first search warrant.

■ As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976) *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976), but on the government to justify a warrantless search. *United States v. Bruton*, 647 F.2d 818 (8th Cir. 1981) *cert. denied*, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). After reviewing the transcript of the post-trial hearing in this matter, we can find no error on the part of the district court. The issue of the burden of proof was neither raised nor ruled upon at the trial level. Moreover, there was clearly sufficient evidence at the post-trial hearing to establish to the satisfaction of the court that no illegal search had taken place. It could be found from the testimony of Officer Combs that he and Hicks viewed the defendant's property through a clearing in the underbrush and did not cross the defendant's encircling fence. Moreover, the defendant himself stated at the hearing that hunters could

possibly enter his property in the same manner as the officers and that there were no posted signs displaying a message against trespassing on his property. In addition, photographs depicting the foliage in question were introduced into evidence for the district court to view. Considering this evidence, the officers' observations of the defendant's property could easily be found to fall under the open fields doctrine established in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) and more recently applied in *Air Pollution Variance Board of Colorado v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974). Under this doctrine, the fourth amendment protection does not extend to observations made from open fields. A finding that the officers observed the defendant's garden area through a clearing in the underbrush and from a position outside the fence is supported by the evidence introduced at the post-trial hearing and therefore, the district court's finding is not necessarily erroneous. Accordingly, we affirm the judgment of the district court.